# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **RAFIQ ROBINSON,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 1:16-cv-00006 (APM) |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Rafiq Robinson was arrested for—though not convicted of—violating the District of Columbia's prohibition on possessing an open container of alcohol in certain public spaces, D.C. Code § 25-1001 ("the POCA law"). Plaintiff filed the present lawsuit on behalf of himself and two potential classes of plaintiffs, challenging the POCA law as unconstitutional on both procedural and substantive due process grounds. As to his procedural due process claim, Plaintiff primarily contends that the POCA law fails to pass constitutional muster because it lacks a state of mind element, thereby inviting arbitrary and discriminatory enforcement. With respect to his substantive due process claim, Plaintiff asserts that the POCA law bears no rational relation to the public welfare and therefore unconstitutionally infringes on his "freedom of action."

Before the court is Defendant Government of the District of Columbia's Motion to Dismiss. After thorough consideration of Plaintiff's Complaint, the parties' pleadings, and the applicable law, the court grants Defendant's Motion and dismisses Plaintiff's Amended Complaint with prejudice.

## I. BACKGROUND

An officer of the Metropolitan Police Department stopped Plaintiff Rafiq Robinson on October 24, 2015, in the alley alongside 104 Kennedy Street N.W., Washington, D.C. *See* Am. Compl., ECF No. 11 [hereinafter Compl.], ¶¶ 50–51.[1] Upon searching Plaintiff's person, the officer discovered a "bottle of Taaka Genuine Vodka in the right rear pocket of [Plaintiff's] pants." *Id.* ¶ 52. The bottle was "half full" and "the top was on the bottle." *Id.* ¶ 53. The officer smelled the bottle, determined it contained alcohol, and arrested Plaintiff for possessing an open container of alcohol in public, in violation of D.C. Code § 25-1001(a) ("the POCA law"), as well as another, unspecified offense. Compl. ¶¶ 54, 59. The POCA law provides that "no person in the District shall drink an alcoholic beverage or possess in an open container an alcoholic beverage in or upon any of the following places: (1) a street, alley, park, sidewalk, or parking area . . . ." D.C. Code § 25-1001(a)(1). The D.C. Code defines an "open container" as "a bottle, can, or other container that is open or from which the top, cap, cork, seal, or tab seal has at some time been removed." *Id.* § 25-101(35).[2] Plaintiff alleges that, at the time of his arrest, he was not visibly intoxicated, the bottle had not been in plain view, he had not drank from the bottle while in public, and he had not demonstrated any intent to drink from the bottle while in public. Compl. ¶¶ 55–58. Plaintiff was booked and fingerprinted at the police station before being released on citation. *Id.* ¶ 60.

On November 6, 2015, the Office of the Attorney General formally charged Plaintiff with violating the POCA law. *Id.* ¶ 61. After Plaintiff's appearance, arraignment, and entry of a not-guilty plea, the District of Columbia Superior Court set a trial date for December 17, 2015, until

---

[1] The Amended Complaint does not disclose what conduct caused the officer to stop Plaintiff, but it is clear Plaintiff was not stopped for being in possession of an open container of alcohol. *See* Compl. ¶¶ 51, 57 (stating that Plaintiff was stopped "for an uncharged incident unrelated to the POCA charge which happened out of the officer's presence" and describing Plaintiff's container of alcohol as "not visible").

[2] Those convicted of violating the POCA law are guilty of a misdemeanor and may be punished by fine, up to 60 days' imprisonment, or both. D.C. Code § 25-1001(d).

which time Plaintiff was on pre-trial release. *Id.* ¶¶ 62–63. Plaintiff appeared for trial, but the Superior Court dismissed the case when the government announced it was not prepared to proceed. *Id.* ¶¶ 65–66.

Plaintiff filed suit in this court on January 4, 2016, seeking relief against the District of Columbia under Section 1983, 42 U.S.C. § 1983, on the theory that the POCA law violates the Due Process Clause of the Fifth Amendment in two respects. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978) (allowing for municipal liability under Section 1983 if the government enacted and enforced an unconstitutional law against the plaintiff). First, he asserts that the POCA law infringes the Fifth Amendment's guarantee of procedural due process because its lack of a state of mind, or mens rea, element invites arbitrary and discriminatory enforcement. Compl. ¶¶ 69–70, 86(a)–(b). Second, Plaintiff claims the POCA law violates the substantive component of the Due Process Clause by infringing on his protected liberty interest in "freedom of action" without adequate justification. *See id.* ¶¶ 70–71, 86(c). Plaintiff seeks to certify and represent two classes of individuals: one class of those who have been *arrested* for POCA violations and one class of those who have been *prosecuted* for POCA violations. *Id.* ¶¶ 78–79. On behalf of himself and the members of each class, Plaintiff seeks injunctive, declaratory, and monetary relief. *Id.* ¶¶ 81–82, 84.

Defendant moved to dismiss Plaintiff's Amended Complaint in full for failure to state a cognizable claim. *See* Def.'s Mot. to Dismiss, ECF No. 12 [hereinafter Def.'s Mot.]. That motion is now ripe for review.

## II.   LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the plaintiff's complaint meets this requirement.  In so doing, the court accepts the plaintiff's factual allegations as true and "construe[s] the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979), *aff'd en banc*, 628 F.2d 199 (1980)).  The court need not accept as true, however, either "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, then the court must grant the defendant's Rule 12(b)(6) motion and dismiss the complaint.  *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

### III.   DISCUSSION

The court begins with Plaintiff's procedural due process claim and then turns to his substantive due process claim. For the reasons explained below, the court concludes that the POCA law violates neither component of the Due Process Clause of the Fifth Amendment.

#### A.   Procedural Due Process

As a preliminary matter, the court notes that Plaintiff brings a facial challenge, rather than an as-applied challenge, to the POCA law. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 13 [hereinafter Pl.'s Opp'n], at 4–6. Traditionally, to succeed on a facial vagueness challenge, the plaintiff had to show "the enactment [wa]s impermissibly vague in all of its applications." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 735 (D.C. Cir. 2016) (alteration in original) (internal quotation mark omitted). That standard rested on the principle that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 486, 495 (1982). Recently, however, the Supreme Court cast doubt on the "in all of its applications" standard, *see Johnson v. United States*, 576 U.S. ___, ___, 135 S. Ct. 2551, 2560–61 (2015), but did not precisely define what standard governs facial vagueness challenges, *see U.S. Telecom Ass'n*, 825 F.3d at 735–36.

Since *Johnson*, the D.C. Circuit has both acknowledged the possibility of a more lenient standard, *see id.* (declining to "decide the full implications of *Johnson*" because the administrative rule at issue "satisfie[d] due process requirements even if [the Court] d[id] not apply *Hoffman*'s elevated bar for facial challenges"), and straightforwardly applied the traditional "in all of its applications" standard, *see Crooks v. Mabus*, No. 15-5212, 2016 WL 7422279, at *3 (D.C. Cir. Dec. 23, 2016) (limiting discussion of *Johnson* to a "*but cf.*" citation). This court need not attempt

5

to articulate a post-*Johnson* standard for facial vagueness challenges here because the POCA law plainly satisfies the Constitution's due process requirements even under a lowered bar. *See, e.g.*, *Nat'l Ass'n for Fixed Annuities v. Perez*, No. 16-1035, 2016 WL 6573480, at *28 (D.D.C. Nov. 4, 2016) (citing *U.S. Telecom Ass'n*, 825 F.3d at 736).[3]

Whether a criminal statute is unconstitutionally vague involves two key inquiries. "To satisfy due process, a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (alterations in original) (internal quotation marks omitted).

---

[3] Defendant frames its discussion of the applicable standard in terms of Plaintiff's standing, arguing that because Plaintiff's own conduct is plainly proscribed by the POCA law, his facial challenge cannot proceed. *See* Def.'s Mot. at 6–7 (citing *Hoffman*, 455 U.S. at 495). The court, however, is confident that Plaintiff has standing to bring his claim, even if his claim ultimately fails.
 As a general matter, an individual has standing when he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ___, ___, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff pleaded sufficient facts to meet the *Lujan* requirements. Plaintiff was injured when he was arrested and formally charged with violating D.C. Code § 25-1001(a); that harm is traceable to the District of Columbia, whose legislature passed the law and whose police force made the arrest; and, were the court to hold the law unconstitutionally vague, Plaintiff's harm could be redressed because Section 1983 authorizes injunctive and monetary relief against municipalities. *See Spokeo*, 136 S. Ct. at 1547; *Lujan*, 504 U.S. at 560–61; *cf. La Botz v. Fed. Election Comm'n*, 61 F. Supp. 3d 21, 28 (D.D.C. 2014) (stating that standing is determined when the suit commences and assessed in light of the facts as stated in the complaint).
 To the extent Defendant argues Plaintiff lacks standing despite satisfying the *Lujan* factors, the court is unpersuaded. The D.C. Circuit recently observed that "the contours of Article III standing with respect to facial constitutional challenges may be imprecise." *Williams v. Lew*, 819 F.3d 466, 476 (D.C. Cir. 2016). Accepting the facts in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, as the court must on a motion to dismiss for lack of standing, the court concludes Plaintiff has alleged facts concerning his arrest and prosecution that plausibly support the claim that his conduct was of a type that could be subject to arbitrary and discriminatory enforcement of the POCA law. *See Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Plaintiff was not, for example, standing on a street corner, visibly drinking from an open container of alcohol. Rather, viewing the facts in the light most favorable to him, he was standing in a public place, without intent to drink in public, and, only upon being subjected to a search, found to be in possession of an unsealed container of alcohol. Accordingly, Plaintiff's conduct plausibly falls within the type of "innocent" conduct that he claims is swept in, and subject to arbitrary and discriminatory enforcement of, the POCA law. That the court ultimately concludes Plaintiff has not stated a plausible claim for relief because the POCA law can be construed so as to ensure its constitutionality does not affect the court's conclusion that Plaintiff has met his burden of showing he may raise such a claim.
 Thus, the court is satisfied that Plaintiff has standing and the court has jurisdiction to hear this matter.

Importantly, Plaintiff does not contend that the POCA law is so vaguely worded that an ordinary person cannot discern the conduct it proscribes. *Cf.* Compl. ¶ 69. Indeed, the statute's prohibition is plain: do not possess open containers of alcohol in one of the listed public spaces. The definition of "open container" includes no words that require the average person to consult a dictionary or which are subject to multiple meanings. "[B]ottle," "can," and "container" are words in common parlance, as are "top, cap, cork, seal or tab seal." So, too, is the phrase "has at some time been removed." *See* D.C. Code § 25-101(35); *cf. Bean v. United States*, 17 A.3d 635, 637–38 & n.3 (D.C. 2011). Moreover, the statute does not contain a subjective standard the police must apply to determine whether what an individual is holding is an "open container." *Cf., e.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 60–64 (1999) (invalidating Chicago's vagrancy ordinance, which required police to order dispersal of or arrest those who "remain in any one place with no apparent purpose," because it did not appropriately limit enforcement discretion). To determine whether a person has violated the law, the police need only answer clear questions of fact: whether the container the person possesses holds an "alcoholic beverage"[4]; if so, whether the container remains sealed or has had its seal removed "at some time"; and whether the person is in a prohibited public space. *See* D.C. Code §§ 25-101(5), 25-101(35), 25-1001(a). Those questions do not require reliance on "wholly subjective judgments" to answer. *See United States v. Williams*, 553 U.S. 285, 306 (2008) (differentiating statutes that present "the possibility that it will sometimes be difficult to determine whether the incriminating fact [the statute] establishes has been proved" from those statutes in which there exists "indeterminacy of precisely what that fact is"); *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525–26 (1994) (explaining that the statutory section at issue

---

[4] The D.C. Code defines an "alcoholic beverage" as "a liquid or solid, patented or not, containing alcohol capable of being consumed by a human being," except as to "a liquid or solid containing less than one-half of 1% of alcohol by volume." D.C. Code § 25-101(5).

7

"set[] forth objective criteria for assessing whether items" were of the type whose transport and sale the statute criminalized).

Plaintiff's procedural due process challenge instead focuses on the second vagueness concern—whether the law is drafted in a way that encourages arbitrary and discriminatory enforcement. In this regard, Plaintiff advances two sub-arguments. First, he claims the definition of "open container" operates as an "irrebuttable presumption that anyone in possession of a container of alcohol that has been opened and recapped intends to drink that alcohol in public," which inappropriately deprives a defendant of the opportunity to show he possessed the container without that intent. *See* Pl.'s Opp'n at 6–7. Second, Plaintiff claims the POCA law impermissibly lacks a mens rea requirement. *See id.* at 7–9.[5] The court begins its discussion with Plaintiff's second argument, as the resolution of that argument proves dispositive of Plaintiff's claim.

### 1.   Lack of a Mens Rea Requirement

Plaintiff's primary argument is that the POCA law's lack of a mens rea element invites arbitrary and discriminatory enforcement. Specifically, Plaintiff contends that the absence of a mens rea element causes the law to criminalize large swaths of conduct that ordinary people would think is innocent. He posits, for example, that a person carrying empty bottles with traces of alcohol to a recycling center would be violating the POCA law. *See* Compl. ¶ 22. So, too, would a person traveling to or from a social event with an already opened bottle of alcohol—say, an expensive bottle of scotch—without any intention of drinking from it en route. Because the statute sweeps in such seemingly innocent conduct, Plaintiff argues, the POCA law vests immense discretion in

---

[5] Plaintiff asserts that he only challenges the definition of "open container," not the POCA law itself, as unconstitutionally vague. Pl.'s Opp'n at 2. However, the court cannot construe that definition in isolation; it must look at the definition's operation within the law. *See, e.g.*, *Richards v. United States*, 369 U.S. 1, 11 (1962) (citing the "fundamental" principle that "a section of a statute should not be read in isolation from the context of the whole Act").

police officers and prosecutors to make arrests for and charge violations of the statute, which has resulted in disproportionate enforcement against the poor, homeless, and racial minorities. *See* Pl.'s Opp'n at 9–13; Compl. ¶¶ 24, 26, 32–34, 46–47.

For its part, Defendant—surprisingly—agrees with Plaintiff that the POCA law lacks a mens rea element. Defendant's position is simple: local legislatures are free to enact strict liability crimes, and the POCA law is a permissible strict liability offense. *See* Def.'s Mot. at 14. Curiously, Defendant makes no argument and cites no legislative history in support of that statement. *See id.*; Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 15 [hereinafter Def.'s Reply], at 9. Although Defendant attached a D.C. Council Committee Report from 1985 to its Motion to Dismiss,[6] that report sheds little light on what type of mens rea element, if any, the D.C. Council intended the POCA law to contain.

The court agrees with the parties that the plain text of the POCA law does not contain a specific mens rea element. There are no words in the statute that describe the person's necessary state of mind. *See* D.C. Code § 25-101(35). The POCA law, on its face, criminalizes the mere act of possessing an open container of alcohol in certain public spaces. *See id.* § 25-1001(a). It does not, for instance, require proof that the defendant intended to consume the alcohol in public. Thus, Plaintiff is correct in stating that the statute equally subjects to arrest and prosecution an individual walking on the sidewalk to a recycling center to dispose of last night's beer cans; an individual walking home from a friend's house through the public park with a re-corked bottle of wine; and an individual sipping from a flask in the alleyway behind a bar.

---

[6] In 1985, the D.C. Council amended the Alcohol Beverage Control Act, which previously prohibited only drinking in public, to include the prohibition at issue here—the possession of alcohol in an open container. *See* Ban on Possession of Open Alcoholic Beverage Containers Act of 1985, D.C. Law 6-64, 6th Council Period (D.C. 1985).

The court rejects, however, the notion that the POCA law's silence as to a person's requisite mental state renders it either a strict liability crime or unconstitutional. Two principles guide the court's conclusion. First, the court's task, whenever possible, is to interpret a statute rather than invalidate it. *See, e.g.*, *Skilling*, 561 U.S. at 403. Second, conscientious of the statutory text and the intent of the legislature, the court must endeavor to interpret the statute in a manner that "avoid[s] serious doubts as to [its] constitutionality." *See Commc'ns Workers of America v. Beck*, 487 U.S. 735, 762 (1988).

Courts routinely read a mens rea requirement into criminal statutes whose texts are silent as to that element. Recently, in *Elonis v. United States*, the Supreme Court emphasized that the "mere omission from a criminal enactment of any mention of criminal intent should not be read as dispensing with it" and set forth guidelines for courts to follow when interpreting such statutes. *See* 575 U.S. ___, ___, 135 S. Ct. 2001, 2009–10 (2015) (internal quotation marks omitted). The *Elonis* Court explained that criminal laws are presumed to contain an implicit mens rea requirement because "wrongdoing must be conscious to be criminal." *Id.* at 2009 (quoting *Morisette v. United States*, 342 U.S. 246, 252 (1952)). Consequently, absent a clear statement from the legislature or an indication from the statute's structure than the legislature intended to create a strict liability offense, courts should interpret statutes that lack an explicit mens rea element to include "only that means rea which is necessary to separate wrongful conduct from otherwise innocent conduct." *See id.* at 2010 (internal quotation marks omitted); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436–38 (1978); *United States v. Burwell*, 690 F.3d 500, 503, 505–07 (D.C. Cir. 2012) (en banc). As a general matter, inferring "a general requirement that a defendant *act* knowingly is itself an adequate safeguard." *Elonis*, 135 S. Ct. at 2010.

Consistent with *Elonis*, the court interprets the POCA law to contain an implicit "knowledge" requirement. If the POCA law is construed to require that an individual *know* the container he possesses contains an alcoholic beverage, *know* the container is unsealed, and *know* he is standing in a public space while in possession of that container, then the law appropriately sifts wrongful conduct from otherwise innocent conduct. Inferring a "knowledge" requirement does not mean a defendant must "know that his conduct is illegal before he may be found guilty." *See id.* at 2009. Instead, it simply ensures the defendant is conscious of the facts that make his conduct fit the definition of the crime, thereby ensuring both that he has the requisite culpable mental state, *id.*, and that the law does not "vest[] virtually complete discretion in the hands of [law enforcement]," *see Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (second alteration in original) (internal quotation marks omitted). Under this construction, the POCA law distinguishes the conduct of a person walking to the recycling center who did not know his or her trash contains remnants of beer from the conduct of Plaintiff, who presumably knew he had an unsealed container of vodka in his pocket when he was in a public alley.

Plaintiff asserts that the court cannot interpret the POCA law as containing an implicit knowledge requirement. He is mistaken. Plaintiff's argument rests on the principle that a federal court cannot construe a state statute more narrowly than has the state's highest court. *See Morales*, 527 U.S. at 61; *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974); Pl.'s Opp'n at 8. The trouble with Plaintiff's argument is that the D.C. Court of Appeals has not *interpreted* the mens rea element of the POCA law; it has merely held that one petitioner's vagueness challenge to the statute failed. In *Bean v. United States*, the D.C. Court of Appeals reviewed the constitutionality of the POCA law when the plaintiff-appellant claimed, for the first time on appeal, that his conviction had to be overturned because the law is unconstitutionally vague. *See* 17 A.3d at 637. Specifically, the

11

petitioner claimed the definition of "open container" is vague because the phrase "has at some time been opened" does not provide adequate notice that those in possession of *closed*, unsealed containers of alcohol while in public are subject to criminal prosecution. *See* Brief for Appellant at 10, 17–18, *Bean*, 17 A.3d 635 (Nos. 10-349, 10-439), 2010 WL 8020342, at *10, 17–18 (arguing that "opened" is not synonymous with "unsealed"). Rejecting Plaintiff's argument, the D.C. Court of Appeals held that "the express words of the statute, including the new definitional section [of "open container"], define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited," and noted in a footnote that the statute is not "too susceptible to misuse." *See Bean*, 17 A.3d at 638 & n.3. There was no argument before the D.C. Court of Appeals regarding the statute's absence of a mens rea element, and, thus, its holding is not in conflict with this court's conclusion that the POCA law contains an implicit knowledge requirement. *Cf. O'Brien*, 414 U.S. at 531; *see also* Pl.'s Opp'n at 14 (acknowledging that the D.C. Court of Appeals has not addressed "the lack of an intent element" in the POCA law). Consequently, the court concludes it may permissibly interpret the POCA law to contain a mens rea requirement without running afoul of federalism principles.

The court recognizes that interpreting the POCA law to contain a general intent requirement does not fully address Plaintiff's concerns. Plaintiff seems to argue that, unless the POCA law is construed as containing a specific intent requirement, the statue will sweep in conduct that ordinary people consider innocent, such as going to a recycling center with bottles that contain modest amounts of alcohol or carrying an opened bottle to be consumed at a private social event. Although the POCA law may reach some innocuous conduct, that alone does not pose a constitutional problem unless the law infringes a fundamental constitutional right or a right created by federal statute. As the discussion in the next section makes clear, the POCA law's prohibition

on possessing an unsealed bottle of alcohol in public does not impermissibly infringe any constitutional right. In terms of procedural due process, the Constitution sets a floor, not a ceiling: the legislature must craft laws that are sufficiently clear to provide fair notice of what is prohibited and prevent arbitrary and discriminatory enforcement. The POCA law satisfies those requirements. If the citizens of the District of Columbia believe that proof of a specific intent to consume alcohol in public is necessary to delineate between criminal and innocent behavior, then they are free to use the political process to achieve that change through their legislative representatives. This court, however, is not the proper forum to advocate for such a policy preference.

Thus, even if Plaintiff's facial challenge to the POCA law is subject to a lower standard than that set forth in *Hoffman*, it cannot survive Defendant's Motion to Dismiss. Put simply, the statute, as this court construes it, is not susceptible to vagueness in *any* application. The plain text of the POCA law provides fair notice of what conduct it proscribes: possession of open containers of alcohol in certain, enumerated public spaces. Moreover, the statute "sets forth objective criteria for assessing whether items constitute [open containers]." *See Posters 'N' Things*, 511 U.S. at 526. Police officers need not rely on their own subjective judgments to determine if a person is violating the law; they need only determine whether the container of alcohol in the individual's possession is sealed or unsealed. Lastly, to the extent any lingering risk of arbitrary or discriminatory enforcement exists, the knowledge requirement the court has inferred, combined with the statute's other clearly defined elements, sufficiently mitigates that risk. *See id.* Accordingly, Plaintiff has not stated a vagueness claim upon which relief could be granted. *See Iqbal*, 556 U.S. at 678; *Am. Chemistry Council*, 922 F. Supp. 2d at 61 (explaining that failure to establish a claim upon which relief could be granted mandates dismissal of the complaint).

*2. "Irrebuttable Presumption"*

Plaintiff contends that the definition of "open container" offends due process because it creates a presumption that an individual intends to drink alcohol in public merely by possessing an unsealed container of alcohol in public, without also providing an opportunity to rebut that presumption. *See* Pl.'s Opp'n at 6–7. That argument, however, is foreclosed by the court's conclusion that the POCA law contains only a general intent requirement. The law does not, as written or interpreted by the court, require proof of a specific intent to drink from the container in public or assume that specific intent exists. Therefore, the statute does not create an "irrebuttable presumption" that offends the Due Process Clause.

### B.   Substantive Due Process Claim

The Fifth Amendment's Due Process Clause has been interpreted to safeguard not only procedural fairness, but also substantive liberty interests. The Supreme Court's jurisprudence differentiates between "fundamental" and "nonfundamental" liberty interests. Fundamental liberty interests are those that "are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted). For a law to permissibly infringe on an individual's fundamental liberty interest, it must be narrowly tailored to serve a compelling governmental interest. *Id.* at 721. In contrast, when a law infringes on a nonfundamental liberty interest, it will be upheld unless there is "no rational relationship between [the law] and some legitimate governmental purpose." *See Gordon v. Holder*, 721 F.3d 638, 656 (D.C. Cir. 2013) (internal quotation mark omitted). The first steps in every due process challenge alleging deprivation of a protected liberty interest, then, are to

determine what liberty interest the plaintiff claims has been infringed and whether that liberty interest is one the Constitution deems fundamental.

Plaintiff asserts a broad liberty interest in "freedom of action," within which would fall mere possession of an unsealed container of alcohol in public. *See* Compl. ¶ 70. However, Plaintiff's description of his interest will not suffice—liberty interests must be defined "in a most circumscribed manner." *See Obergefell v. Hodges*, 576 U.S. ___, ___, 135 S. Ct. 2584, 2602 (2015); *Glucksberg*, 521 U.S. at 721. Thus, properly articulated, Plaintiff's claimed liberty interest is in possessing an unsealed container of alcohol in public.

Plaintiff does not advance any argument that the POCA law infringes a fundamental right. *See* Pl.'s Opp'n at 14–15; *cf.* Def.'s Reply at 8. Indeed, considering both the asserted right's proper articulation and the extensive history of alcohol regulation in this country, it is difficult to imagine any successful argument that the possession of an unsealed container of alcohol in public is "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Cf. Glucksberg*, 521 U.S. at 720–21, 723, 728 (explaining that a right historically subject to heavy regulation is not a fundamental right). Consequently, the court applies rational basis review to determine whether the POCA law is constitutional.

Under rational basis review, the court need only determine whether there is some conceivable basis for the POCA law's definition of "open container." *See Gordon*, 721 F.3d at 656 (explaining that rational basis review requires the party challenging the law "to negative every conceivable basis which might support the law" (internal quotation marks omitted)). The court has little trouble concluding the POCA law passes this threshold. The District of Columbia has a legitimate state interest in promoting the general welfare, which includes regulating or even proscribing activities that create a risk of harm to others or are a public nuisance—such as public

consumption of alcohol and public intoxication. As Defendant argues, there is "at least some positive correlation" between possessing an unsealed container of alcohol in public and consumption of alcohol in public. *See* Def.'s Mot. at 11. That is all that is required. *See Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487–88 (1955); *Gordon*, 721 F.3d at 656. That the POCA law does not implicate *sealed* containers of alcohol only further reflects that it rationally aims to ameliorate consumption of alcohol and intoxication in public. *See* D.C. Code §§ 25-101(35), 25-1001.

Plaintiff's reliance on *People v. Lee*, 448 N.E.2d 1328 (N.Y. 1983), is misplaced. *See* Pl.'s Opp'n at 15. In *Lee*, the New York Court of Appeals struck down a similar open-container law on the ground that criminalizing mere possession of an open or unsealed container of alcohol in public, without requiring an intent to consume in public, bore no reasonable relation to promotion of the public good. *See* 448 N.E.2d at 1330–31. The court respectfully disagrees with the *Lee* court's analysis and conclusion. While it may be true that not every opening or unsealing of a container of alcohol leads to public consumption of alcohol or public intoxication, *see id.* at 1331, rational basis review does not require that the law be "in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Lee Optical*, 348 U.S. at 487–88.

The court concludes that criminalizing the possession of unsealed containers of alcohol in public is a rational means by which to advance the state's legitimate interest in proscribing public consumption of alcohol and public intoxication. Accordingly, the court concludes the POCA law does not violate the Fifth Amendment's promise not to deprive an individual of liberty without due process of law.

## IV.     CONCLUSION

In light of the foregoing, the court concludes Plaintiff has not sufficiently pleaded a claim that the POCA law violates the Fifth Amendment. Therefore, the court grants Defendant's Motion to Dismiss and dismisses Plaintiff's Amended Complaint with prejudice. A separate order accompanies this Memorandum Opinion.

Dated: January 11, 2017

Amit P. Mehta
United States District Judge